UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| **Richard W. DeOtte**, on behalf of himself and others similarly situated; **Yvette DeOtte**; **John Kelley**; **Alison Kelley**; **Braidwood Management Inc.**, on behalf of itself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Robert F. Kennedy Jr.**, in his official capacity as Secretary of Health and Human Services; **Scott Bessent**, in his official capacity as Secretary of the Treasury; **Keith E. Sonderling**, in his official capacity as Acting Secretary of Labor; **United States of America**,<br><br>Defendants. | Case No. 4:26-cv-712 |

## COMPLAINT—CLASS ACTION

Federal regulations require health insurance to cover all FDA-approved contraceptive methods. *See* 45 C.F.R. § 147.130(a)(1)(iv); 29 C.F.R. § 2590.715–2713(a)(1)(iv); 26 C.F.R. § 54.9815-2713(a)(1)(iv). This "Contraceptive Mandate" violates the Religious Freedom Restoration Act because it substantially burdens the religious exercise of employers and individuals who object to contraception and abortifacients.

In 2018, the Trump Administration issued final rules that exempt both religious and moral objectors from the Contraceptive Mandate. *See Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care*

*Act*, 83 Fed. Reg. 57,536 (November 15, 2018) (attached as Exhibit 9); *Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act*, 83 Fed. Reg. 57,592, 57,592 (Nov. 15, 2018). But on August 13, 2025, a federal judge in Philadelphia pronounced the rules "arbitrary and capricious" and vacated the rules in their entirety. *See Pennsylvania v. Trump*, 795 F. Supp. 3d 607 (E.D. Pa. 2025); *see also Pennsylvania v. Trump*, No. 2:17-cv-04540-WB (E.D. Pa.), ECF No. 356 (attached as Exhibit 12); *id.* at ECF No. 357 (attached as Exhibit 13). Because of this ruling, the plaintiffs and their fellow class members are once again subjected to the requirements of the Contraceptive Mandate, and they seek a permanent injunction against its enforcement.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Richard W. DeOtte resides in Tarrant County, Texas.

4. Plaintiff Yvette DeOtte resides in Tarrant County, Texas.

5. Plaintiff John Kelley resides in Tarrant County, Texas.

6. Plaintiff Alison Kelley resides in Tarrant County, Texas.

7. Plaintiff Braidwood Management Inc. is a for-profit, closely held corporation incorporated under the laws of Texas.

8. Defendant Robert F. Kennedy Jr. is the U.S. Secretary of Health and Human Services. His office is located at 200 Independence Avenue SW, Washington, D.C. 20201. Secretary Kennedy is sued in his official capacity.

9.   Defendant Scott Bessent is the U.S. Secretary of the Treasury. His office is located at 1500 Pennsylvania Avenue NW, Washington, D.C. 20220. Secretary Bessent is sued in his official capacity.

10.   Defendant Keith E. Sonderling is the Acting U.S. Secretary of Labor. His office is located at 200 Constitution Avenue NW, Washington, D.C. 20210. Secretary Sonderling is sued in his official capacity.

11.   Defendant United States of America is the federal government of the United States of America.

## THE CONTRACEPTIVE MANDATE

12.   The Affordable Care Act requires group health plans and health insurance issuers to cover "preventive care" for women without any cost-sharing requirements such as deductibles or co-pays. *See* 42 U.S.C. § 300gg-13(a)(4) (attached as Exhibit 1). The statute empowers the Health Resources and Services Administration to determine the "preventive care" that health insurance plans must cover. *See id.*

13.   In 2011, the Health Resources and Services Administration decided that all FDA-approved contraceptive methods must be covered as "preventive care" under the Affordable Care Act. This "Contraceptive Mandate" is codified at 45 C.F.R. § 147.130(a)(1)(iv),  29  C.F.R.  § 2590.715–2713(a)(1)(iv),  and  26  C.F.R. § 54.9815–2713(a)(1)(iv) (attached as Exhibits 2–4).

14.   The Contraceptive Mandate exempts church employers. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 78 Fed. Reg. 39870, 39,896 (July 2, 2013) (attached as Exhibit 5).

15.   The Contraceptive Mandate also exempts the "grandfathered" plans that are protected under section 1251 of the Affordable Care Act. *See* 29 C.F.R. § 2590.715–1251.

16.   The Contraceptive Mandate also offered an "accommodation"—not an exemption—to religious non-profits who object to covering contraception for sincere religious reasons. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 78 Fed. Reg. 39870, 39896–97 (July 2, 2013) (describing provisions that were codified at 45 C.F.R. § 147.131(c)) (attached as Exhibit 5). To use this accommodation, an entity was required to certify that it is a religious non-profit that objects to covering some or all methods of contraception on religious grounds. *See id.* at 39896 (describing provisions that were codified at 45 CFR § 147.131(b)). Then the issuer of the group health insurance used by the religious non-profit must exclude contraceptive coverage from that employer's plan, but the issuer must pay for any contraception used by the non-profit's employees. *See id.* (describing provisions that were codified at 45 C.F.R. § 147.131(c)). The issuer may not shift any of those costs on to the religious non-profit, its insurance plan, or its employee beneficiaries. *See id.*

17.   If a religious non-profit is self-insured, then its third-party administrator must pay for the employees' contraception, without shifting any costs on to the religious non-profit, its insurance plan, or its employee beneficiaries. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 78 Fed. Reg. 39870, 39893 (July 2, 2013) (describing provisions that were codified at 26 C.F.R. § 54.9815–2713A(b)(2)) (attached as Exhibit 5).

18.   In *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), the Supreme Court held that the Contraceptive Mandate violated the Religious Freedom Restoration as applied to closely held, for-profit corporations that oppose the coverage of contraception for sincere religious reasons.

19.   In *Wheaton College v. Burwell*, 573 U.S. 958 (2014), the Supreme Court enjoined federal officials from requiring a religious non-profit to directly notify its health insurance issuers or third-party administrators about its religious objections to the Contraceptive Mandate.

20.   In response to *Hobby Lobby* and *Wheaton College*, the Obama Administration amended the Contraceptive Mandate in two ways. First, it allowed closely held for-profit corporations to use the accommodation offered to religious non-profits. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 80 Fed. Reg. 41318, 41346 (July 14, 2015) (describing provisions codified at 45 C.F.R. § 147.131(b)) (attached as Exhibit 6); *id*. at 41345 (describing provisions codified at 29 C.F.R. § 2590.715–2713A(a)); *id*. at 41343 (describing provisions codified at 26 C.F.R. § 54.9815–2713A(a)). Second, it allowed employers seeking this accommodation to choose whether to directly notify their health insurance issuers or third-party administrators—or whether to notify the Secretary of Health or Human Services, who would then inform the health insurance issuers or third-party administrators of the employer's religious objections and of their need to pay for the contraception of the affected employees. *See Coverage of Certain Preventive Services Under the Affordable Care Act*, 80 Fed. Reg. 41318, 41346 (July 14, 2015) (describing provisions codified at 45 C.F.R. § 147.131(b)(3)); *id*. at 41345 (describing provisions codified at 29 C.F.R. § 2590.715–2713A(a)(3)); *id*. at 41344 (describing provisions codified at 26 C.F.R. § 54.9815–2713A(b)(ii)). Under the previous version of Contraceptive Mandate, objecting religious non-profits were compelled to directly notify their health insurance issuers or third-party administrators. *See, e.g.*, *Wheaton College*, 573 U.S. 958.

21.   On May 4, 2017, President Trump issued an executive order instructing the Secretary of the Treasury, the Secretary of Labor, and the Secretary of Health and Human Services to amend the Contraceptive Mandate to address conscience-based objections. *See* Executive Order 13798 (attached as Exhibit 7).

22.   In response to this order, the Department of the Treasury, the Department of Labor, and the Department of Health and Human Services issued an interim final

rule that exempts any non-profit or for-profit employer from the Contraceptive Mandate if it opposes the coverage of contraception for sincere religious reasons. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 82 Fed. Reg. 47792 (October 13, 2017) (attached as Exhibit 8).

23.   Under this interim final rule, objecting employers are no longer required to use the accommodation process that requires their health insurance issuer or third-party administrator to pay for their employees' contraception. *See id.* at 47835 (codified at 45 C.F.R. § 147.132(a)). And there is no longer any requirement that objecting employers notify the government or take any steps that would facilitate or assist in the provision of objectionable contraception. *See id.* at 47835 (codified at 45 C.F.R. § 147.132(a)(2)).

24.   The interim final rule also accommodated individuals who object to contraceptive coverage in their health insurance for sincere religious reasons. *See id.* at 47835 (creating a new provision in 45 C.F.R. § 147.132(b)). Under the original Contraceptive Mandate, individual religious objectors were forced to choose between purchasing health insurance that covers contraception or forgoing health insurance entirely — unless they could obtain insurance through a grandfathered plan or a church employer that was exempt from Contraceptive Mandate. The interim final rule ensured that individual religious objectors would have the option to purchase health insurance that excludes contraception from any willing health insurance issuer.

25.   Several states challenged the interim final rule's accommodation of religious objectors. In *Pennsylvania v. Trump*, 281 F. Supp. 3d 553 (E.D. Pa. 2017), a federal district court issued a nationwide preliminary injunction against the interim final rule. In *California v. Health and Human Services*, 281 F. Supp. 3d 806 (N.D. Cal. 2017), a different federal district issued a second nationwide preliminary injunction against the interim final rule.

26.   The Departments then issued a final rule on November 15, 2018, which preserved the interim final rule's exemptions for who object to the Contraceptive Mandate on religious grounds. *See Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act*, 83 Fed. Reg. 57,536 (November 15, 2018) (attached as Exhibit 9). The final rule was scheduled to take effect on January 14, 2019. On January 14, 2019, however, the federal district court in Pennsylvania issued a nationwide preliminary injunction against its enforcement. *See Pennsylvania v. Trump*, 351 F. Supp. 3d 791 (E.D. Pa. 2019); *Pennsylvania v. Trump*, No. 2:17-cv-04540-WB (E.D. Pa.), ECF No. 135 (attached as Exhibit 10); *id.*, ECF No. 136 (attached as Exhibit 11).

27.   As a result of this nationwide preliminary injunction, the Obama-era Contraceptive Mandate remained in place, which compelled religious employers and individual insurance beneficiaries to subsidize or facilitate the provision of abortifacient contraception.

28.   In response to the nationwide preliminary injunctions that restrained the Trump Administration from enforcing its interim final rule, the plaintiffs filed a class-action lawsuit in this Court on October 6, 2018, seeking to enjoin the continued enforcement of the Obama-era Contraceptive Mandate. *See* Original Complaint, *De-Otte v. Azar*, No. 4:18-cv-00825-O, ECF No. 1.

29.   The plaintiffs asked this Court to certify two classes. The first class (the "Braidwood class" or the "Employer class") consisted of:

> Every current and future employer in the United States that objects, based on its sincerely held religious beliefs, to establishing, maintaining, providing, offering, or arranging for: (i) coverage or payments for some or all contraceptive services; or (ii) a plan, issuer, or third-party administrator that provides or arranges for such coverage or payments.

The second class (the "DeOtte class" or the "Individual Class") consisted of:

> All current and future individuals in the United States who: (1) object to coverage or payments for some or all contraceptive services based on sincerely held religious beliefs; and (2) would be willing to purchase or obtain health insurance that excludes coverage or payments for some or all contraceptive services from a health insurance issuer, or from a plan sponsor of a group plan, who is willing to offer a separate benefit package option, or a separate policy, certificate, or contract of insurance that excludes coverage or payments for some or all contraceptive services.

30.   This Court certified both classes. *See DeOtte v. Azar*, 332 F.R.D. 188 (N.D. Tex. 2019); Order Granting Motion to Certify Class, *DeOtte v. Azar*, No. 4:18-cv-00825-O, ECF No. 33 (March 30, 2019). Then this Court awarded classwide declaratory and injunctive relief that restrained the defendants from enforcing the Contraceptive Mandate against the plaintiffs or against any member of the certified class. *See DeOtte v. Azar*, 393 F. Supp. 3d 490 (N.D. Tex. 2019); Judgment, *DeOtte v. Azar*, No. 4:18-cv-00825-O, ECF No. 98 (July 29, 2019).

31.   The state of Nevada, which had sought to intervene in these proceedings, appealed this Court's judgment to the U.S. Court of Appeals for the Fifth Circuit.

32.   On July 8, 2020, the Supreme Court of the United States vacated the nationwide preliminary injunction in *Pennsylvania v. Trump*, which had restrained the Trump Administration from enforcing its final rule that protects religious objectors from the Contraceptive Mandate. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020).

33.   On December 17, 2021, the U.S. Court of Appeals for the Fifth Circuit held that the Supreme Court's decision to vacate the nationwide preliminary injunction that had been issued in in *Pennsylvania v. Trump* rendered this case moot. *See DeOtte v. Nevada*, 20 F.4th 1055 (5th Cir. 2021). The court of appeals accordingly vacated the judgment that this Court had entered on July 29, 2019. *See id.* at 1071.

34.   The plaintiffs petitioned for rehearing en banc, but the Fifth Circuit denied rehearing on August 23, 2022, in a 9-8 vote. On August 31, 2022, this Court issued

an order dismissing the case as moot, in accordance with the Fifth Circuit's instructions. *See* Order, *DeOtte v. Azar*, No. 4:18-cv-00825-O, ECF No. 118.

35. After the Supreme Court's ruling in *Little Sisters of the Poor*, the *Pennsylvania v. Trump* litigation was remanded to the federal district court in Philadelphia. The Supreme Court in *Little Sisters of the Poor* had vacated only the preliminary injunction that the district court had issued against the enforcement of the Trump Administration's final rule, so the parties returned to the district court to litigate the remainder of the case.

36. On August 13, 2025, the federal district court in *Pennsylvania v. Trump* granted summary judgment to the plaintiffs, pronounced the Trump Administration's final rule that protects religious objectors "arbitrary and capricious," and vacated the final rule in its entirety. *See Pennsylvania v. Trump*, 795 F. Supp. 3d 607 (E.D. Pa. 2025); *Pennsylvania v. Trump*, No. 2:17-cv-04540-WB (E.D. Pa.), ECF No. 356 (attached as Exhibit 12); *id.* at ECF No. 357 (attached as Exhibit 13).

37. As a result of the vacatur of the final rule in *Pennsylvania v. Trump*, the Obama-era Contraceptive Mandate remains in place, which compels religious employers and individual insurance beneficiaries to subsidize or facilitate the provision of abortifacient contraception.

38. Because of the ruling in *Pennsylvania v. Trump*, the plaintiffs and their fellow class members are once again subjected to the requirements of the Contraceptive Mandate.

39. The district court's vacatur of the final rule protecting religious objectors in *Pennsylvania v. Trump* means that this case is no longer moot.

### STATEMENT OF THE CLAIM—OBJECTING INDIVIDUALS

40.   Plaintiffs Richard and Yvette DeOtte and plaintiffs John and Alison Kelley are Christians who believe that life begins at conception, and that all human life is sacred from conception until natural death.

41.   Because of their religious beliefs, the DeOttes and the Kelleys regard the use of abortifacient contraception as morally equivalent to abortion.

42.   Mr. DeOtte and Mr. Kelley are self-employed and responsible for purchasing their own health insurance for themselves and for their families.

43.   The Contraceptive Mandate violates the Religious Freedom Restoration Act because it forces the DeOttes and the Kelleys, and other religious believers, to choose between purchasing health insurance that makes them complicit in abortifacient contraception, or forgoing health insurance entirely. That is a substantial burden on the exercise of their religion. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720 (2014); *DeOtte v. Azar*, 393 F. Supp. 3d 490, 509 (N.D. Tex. 2019).

44.   The DeOttes and the Kelleys have opted to forego health insurance rather than pay for insurance that subsidizes abortifacient contraception. They would, however, be willing to purchase health insurance if it were possible to buy insurance that excludes contraceptive coverage.

45.   There is no compelling governmental interest in requiring religious believers to subsidize other people's contraception as a condition of purchasing health insurance.

46.   Even if one were to assume that the government has a compelling interest in ensuring that women can access contraception at zero marginal cost, there are other ways for the government to achieve that goal without burdening the religious freedom of those who object to abortifacient contraception on religious grounds.

47.   Mr. DeOtte sues as representative of a class of all current and future individuals in the United States who: (1) object to coverage or payments for some or all

contraceptive services based on sincerely held religious beliefs; and (2) would be willing to purchase or obtain health insurance that excludes coverage or payments for some or all contraceptive services from a health insurance issuer, or from a plan sponsor of a group plan, who is willing to offer a separate benefit package option, or a separate policy, certificate, or contract of insurance that excludes coverage or payments for some or all contraceptive services.

48.   The Court has already certified the class of objecting individuals represented by Mr. DeOtte. *See DeOtte v. Azar*, 332 F.R.D. 188 (N.D. Tex. 2019); Order Granting Motion to Certify Class, *DeOtte v. Azar*, No. 4:18-cv-00825-O, ECF No. 33 (March 30, 2019). Mr. DeOtte wishes to continue representing that certified class.

## STATEMENT OF THE CLAIM—OBJECTING EMPLOYERS

49.   Dr. Steven F. Hotze is the founder, owner, and CEO of the Hotze Health & Wellness Center. The Hotze Health & Wellness Center is the DBA ("doing business as") name of Hotze Medical Association P.A., a Texas professional association.

50.   The people who work at the Hotze Health & Wellness Center are employed by a separate management company called Braidwood Management Inc. Braidwood Management Inc. is a Texas corporation, and it is owned by a trust of which Dr. Hotze is the sole trustee and beneficiary. Dr. Hotze is also the President, Secretary, Treasurer, and sole member of the Board of Braidwood Management Inc.

51.   Braidwood Management Inc. employs approximately 70 individuals, and its employees work at one of the following three business entities, each of which is owned or controlled by Dr. Hotze: the Hotze Health & Wellness Center, Hotze Vitamins, or Physicians Preference Pharmacy International LLC.

52.   Braidwood Management Inc. is self-insured and provides health insurance to its employees. Because Braidwood has more than 50 employees, it is compelled to

offer ACA-compliant health insurance to its employees or face heavy financial penalties. *See* 26 U.S.C. § 4980H(c)(2).

53.   Dr. Hotze is a Christian, and he operates his business according to Christian principles and teaching.

54.   Dr. Hotze believes that life begins at conception, and that the use of abortifacient contraception is tantamount to abortion. Dr. Hotze's beliefs on this matter are rooted in his Christian faith, which teaches that all human life is sacred from conception until natural death.

55.   Dr. Hotze also believes that the Bible is the Word of God, and the Bible teaches that sexual relations may occur only within a marriage between one man and one woman.

56.   Although Dr. Hotze's Christian beliefs do not oppose the use of non-abortifacient contraception by married couples to prevent pregnancy, Dr. Hotze nevertheless objects to the Contraceptive Mandate's requirement that he provide non-abortifacient contraception to his employees at zero marginal cost because it facilitates sexual activity outside of marriage.

57.   The Contraceptive Mandate violates the Religious Freedom Restoration Act because it forces Braidwood to subsidize or facilitate the provision of abortifacient contraception. It also forces Braidwood to subsidize or facilitate the provision of non-abortifacient contraception which is often (though not always) used to facilitate non-marital sexual activity. Under the Contraceptive Mandate, Braidwood must choose between: (1) Providing contraception to its employees; (2) Executing a self-certification form that leads to the provision of contraception by others; or (3) Paying a tax penalty of $100 per employee per day under 26 U.S.C. § 4980D. That is a substantial burden on the exercise of its religion. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 691 (2014).

58.   Dr. Hotze refuses to allow Braidwood to execute the self-certification form that the Contraceptive Mandate offers to objecting employers. Dr. Hotze regards the submission of that form as an act that affirmatively assists and facilitates the provision of abortifacient and non-abortifacient contraception, in violation of his sincere religious beliefs. Dr. Hotze believes that executing a certification form that enables his company's employees to obtain and use abortifacient contraceptive methods free of charge, or that enables them to obtain non-abortifacient contraception for use in non-marital sexual activity, is as much a violation of his religious beliefs as providing the contraception directly.

59.   Instead, Dr. Hotze has instructed Braidwood to terminate contraceptive coverage in its self-insured health plan effective December 1, 2018. Braidwood implemented this new policy after the religious exemptions had been announced in the final rule of November 15, 2018. The nationwide injunction issued by the Pennsylvania district court, however, has subjected Braidwood to the previous iteration of the Contraceptive Mandate, so Braidwood is now facing substantial tax penalties—$100 per employee per day—for conduct that is entirely within the company's rights under the Religious Freedom Restoration Act. *See* 26 U.S.C. § 4980D.

60.   There is no "compelling governmental interest" in ensuring that women can access contraception at zero cost, and even if there were, there are many ways to achieve this goal in a manner that is less restrictive of Braidwood's religious freedom.

61.   Braidwood Management Inc. sues as representative of a class of every present and future employer in the United States that objects, based on its sincerely held religious beliefs, to establishing, maintaining, providing, offering, or arranging for: (i) coverage or payments for some or all contraceptive services; or (ii) a plan, issuer, or third-party administrator that provides or arranges for such coverage or payments.

62.   The Court has already certified the class of objecting employers represented by Braidwood Management Inc. *See DeOtte v. Azar*, 332 F.R.D. 188 (N.D. Tex.

2019); Order Granting Motion to Certify Class, *DeOtte v. Azar*, No. 4:18-cv-00825-O, ECF No. 33 (March 30, 2019). Braidwood wishes to continue representing that certified class.

## CLASS-ACTION ALLEGATIONS—OBJECTING INDIVIDUALS

63.    Mr. DeOtte brings this class action under Rule 23(b)(2) of the federal rules of civil procedure.

64.    The class comprises all current and future individuals in the United States who: (1) object to coverage or payments for some or all contraceptive services based on sincerely held religious beliefs; and (2) would be willing to purchase or obtain health insurance that excludes coverage or payments for some or all contraceptive services from a health insurance issuer, or from a plan sponsor of a group plan, who is willing to offer a separate benefit package option, or a separate policy, certificate, or contract of insurance that excludes coverage or payments for some or all contraceptive services.

65.    The number of persons in the class makes joinder of the individual class members impractical.

66.    There are questions of law common to the class. All class members are consumers of health insurance who object on religious grounds to the coverage of contraception, yet are forced to choose between participating in an insurance policy or plan that subsidizes and provides for objectionable contraception in violation of their religious beliefs, or foregoing health insurance entirely. The common legal questions are whether this substantially burdens the religious freedom of the class members, and whether this burden represents the least restrictive means of advancing a compelling governmental interest. *See* 42 U.S.C. § 2000bb-1.

67.    Mr. DeOtte's claims are typical of other members of the class. The Contraceptive Mandate substantially burdens the religious freedom of each class member in

the same way—by compelling them to forego health insurance if they want to avoid participating in an insurance policy or plan that covers objectionable contraceptive methods.

68.   Mr. DeOtte adequately represents the interests of the class, and he has no interests antagonistic to the class.

69.   A class action is appropriate under Rule 23(b)(2) because the defendants are acting on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CLASS-ACTION ALLEGATIONS—OBJECTING EMPLOYERS

70.   Braidwood Management Inc. brings this class action under Rule 23(b)(2) of the federal rules of civil procedure.

71.   The class comprises every current and future employer in the United States that objects, based on its sincerely held religious beliefs, to establishing, maintaining, providing, offering, or arranging for: (i) coverage or payments for some or all contraceptive services; or (ii) a plan, issuer, or third-party administrator that provides or arranges for such coverage or payments.

72.   The number of persons in the class makes joinder of the individual class members impractical.

73.   There are questions of law common to the class. All class members are employers who object on religious grounds to some or all methods of contraception. Yet the Contraceptive Mandate forces them to choose from among the following options: (1) Providing contraceptive coverage in their employees' health insurance; (2) Filling out and submitting a form that leads directly to the provision of objectionable contraceptive methods by others; or (3) Paying a tax penalty of $100 per employee per day under 26 U.S.C. § 4980D. The common legal questions are whether this substantially burdens the religious freedom of the employer class members, and whether

this burden represents the least restrictive means of advancing a compelling governmental interest. *See* 42 U.S.C. § 2000bb-1.

74.    Braidwood's claims are typical of other members of the class. The Contraceptive Mandate substantially burdens the religious freedom of each class member in the same way—by compelling them to choose between providing contraceptive coverage in their employees' health insurance; filling out and submitting a form that leads directly to the provision of objectionable contraceptive methods by others; or paying a heavy financial penalty under 26 U.S.C. § 4980D.

75.    Braidwood adequately represents the interests of the employer class, and it has no interests antagonistic to the class.

76.    A class action is appropriate under Rule 23(b)(2) because the defendants are acting on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CAUSES OF ACTION

77.    The plaintiffs are suing under the Religious Freedom Restoration Act and the Administrative Procedure Act, each of which supplies a cause of action for the claims that they are asserting. *See* 42 U.S.C. 2000bb-1(c); 5 U.S.C. § 702.

## DEMAND FOR RELIEF

78.    The plaintiffs respectfully request that the court:

    a.    declare that the Contraceptive Mandate violates the rights of the plaintiffs and their fellow class members under the Religious Freedom Restoration Act;

    b.    hold unlawful and set aside any agency action that seeks to enforce the Contraceptive Mandate without adequately accommodating the rights of religious objectors under the Religious Freedom Restoration Act;

    c.      permanently enjoin the defendants from enforcing the Contraceptive Mandate in a manner that fails to adequately accommodate the rights of religious objectors under the Religious Freedom Restoration Act;

    d.      award costs and attorneys' fees under 42 U.S.C. § 1988;

    e.      award all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

 /s/ Jonathan F. Mitchell

| | |
|---|---|
| Charles W. Fillmore | Jonathan F. Mitchell |
| Texas Bar No. 00785861 | Texas Bar No. 24075463 |
| The Fillmore Law Firm, L.L.P. | Mitchell Law PLLC |
| 201 Main Street, Suite 801 | 111 Congress Avenue, Suite 400 |
| Fort Worth, Texas 76102 | Austin, Texas 78701 |
| (817) 332-2351 (phone) | (512) 686-3940 (phone) |
| (817) 870-1859 (fax) | (512) 686-3941 (fax) |
| chad@fillmorefirm.com | jonathan@mitchell.law |

*Counsel for Plaintiffs and*
*the Proposed Classes*

Dated: June 10, 2026